IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America ) | |
| ) | Cr. No. 6:02-1358-HMH |
| vs. ) | |
| ) | |
| Octavius S. Cline, ) | **OPINION AND ORDER** |
| ) | |
| Movant. ) | |

This matter is before the court on Octavius S. Cline's ("Cline") motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and motion for discovery. After a thorough review of the facts and pertinent law, the court summarily dismisses Cline's § 2255 motion and denies his motion for discovery as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 2004, a jury found Cline guilty of one count of conspiracy to possess with intent to distribute or to distribute 50 grams or more of crack cocaine. Michael F. Talley ("Talley") represented Cline at trial and sentencing, and Michael MacKinnon ("MacKinnon") represented his co-defendant, Timothy G. Craig ("Craig"). On January 4, 2005, Cline was sentenced to 360 months' imprisonment. Cline appealed his conviction and sentence. Andrew Mackenzie ("Mackenzie") and Richard Warder ("Warder") (collectively "appellate counsel") represented Cline on appeal. On March 1, 2006, the United States Court of Appeals for the Fourth Circuit affirmed Cline's conviction. United States v. Cline, No. 05-4075, 2006 WL 487089, at *1 (4th Cir. March 1, 2006) (unpublished). Cline filed a petition for rehearing, which the Fourth Circuit denied on May 31, 2007. The Fourth

1

Circuit's judgment affirming Cline's conviction took effect on June 13, 2006. Cline filed the instant § 2255 motion on August 22, 2007.[1]

In his § 2255 motion, Cline alleges that the Government knowingly presented perjured testimony at his trial. (Cline's Mem. Supp. § 2255 Mot. 4.) In addition, Cline alleges that his appellate counsel was constitutionally ineffective for failing to challenge the Government's use of an unconstitutionally suggestive identification process with one of its witnesses. (Id. at 14.) The court will address each of Cline's alleged grounds for relief below.

## II. DISCUSSION OF THE LAW

### A. Prosecutorial Misconduct

First, Cline alleges that the Government committed prosecutorial misconduct by knowingly presenting perjured testimony during his trial. At Cline's trial, several Government witnesses estimated that they witnessed Cline selling drugs beginning in 1999 or 2000. Michael Grove ("Grove") testified that he witnessed Cline selling crack cocaine "probably between 2000, I guess." (Trial Tr. 6.) Cline objected to this testimony, and the court overruled the objection on the grounds that Grove's testimony was subject to cross-examination. (Id.) On cross-examination, Grove testified "I don't remember exact date and time. I can remember probably years. I mean, I sold like to [Cline], like I said, on several occasions, probably maybe from '99 to all the way up to the time of my arrest [on December 3, 2002]." (Id. 20.) Patricia Edmonds ("Edmonds") testified that she witnessed Cline selling drugs "in between May of 2000 until we got in trouble." (Id. 54.) However, she also stated

---

[1] See Houston v. Lack, 487 U.S. 266 (1988).

2

that she did not know the exact date. (Id.) Finally, Chadwick Teasley testified that he bought drugs from Cline "[a]nywhere from '99 on up 2000 maybe something around in there." (Trial Tr. 105-06.) Cline objected to this testimony, and the court overruled the objection. (Trial Tr. 106).

Cline argues that the Government's attorneys committed prosecutorial misconduct in violation of his due process rights by presenting this testimony because he was incarcerated from August 1999 to February 2001. After Grove's testimony, Talley and MacKinnon presented this information to the court and requested that the court instruct the jury to disregard any testimony that implicated Cline during the period of his incarceration. (Id. 99-102.) The Government objected to this instruction on the grounds that Grove testified that Cline's drug activities continued until December 3, 2002, and that he never gave a specific date. (Id. 100-01.) Ultimately, the court declined to give the instruction because Grove was vague regarding dates. (Id. 102.)

In addition to requesting the instruction, Talley objected contemporaneously to any testimony regarding Cline's drug activities prior to 2001. (Id. 6, 106.) The court overruled the objections because the testimony was subject to cross-examination. (Trial Tr. 6, 106.) Further, Cline testified at trial that he was incarcerated in 2000 and was released in February 2001. (Id. 126.)

"The test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Brockington, 849 F.2d 872, 875 (4th

3

Cir. 1988) (internal quotation marks omitted).  The use of testimony which the prosecution knows is perjured or false may constitute prosecutorial misconduct.  See Giglio v. United States, 405 U.S. 150, 153 (1972).

Based on the above facts, Cline fails to demonstrate any evidence of prosecutorial misconduct.  First, as the Government argued and the court agreed, none of the witnesses gave any date with certainty.  All admitted that they were estimating dates regarding past events.  Therefore, there is no evidence that the Government knowingly suborned perjured testimony.  Further, even if Cline could demonstrate that the Government knowingly presented false testimony, he cannot demonstrate prejudice because his attorneys, the court, and the jury were all made aware of Cline's period of incarceration.  Therefore, Cline's prosecutorial misconduct claim is without merit.

### B.  Ineffective Assistance

Second, Cline argues that his appellate counsel rendered ineffective assistance of counsel for failing to challenge an "identification process us[ed] by the Government in this case."  (Cline's Mem. Supp. § 2255 Mot. 14.)  In order to successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, Cline must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by his counsel's deficient performance.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  With respect to the second prong, Cline must demonstrate that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"In applying [the Strickland] test to claims of ineffective assistance of counsel on appeal, . . . reviewing courts must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (internal quotation marks omitted). "Counsel is not obligated to assert all nonfrivolous issues on appeal, as there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Id. (internal quotation marks omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (internal quotation marks omitted).

During trial, the Government called Rhonda Boykin ("Boykin") as a witness. On cross-examination, Boykin testified that prior to the trial, Government attorneys, Regan Pendleton and two unnamed men, presented her with photographs of Cline and Craig and asked her if she knew who they were. (Trial Tr. 87, 97.) Boykin responded that she knew the two men. (Id. 87) Talley and MacKinnon objected to the identification procedure as impermissibly suggestive, and the court heard from the parties on the issue. (Id. 88, 92, 95-99.)

Upon further questioning outside the presence of the jury, Boykin testified that she told the Government's attorneys she knew the men in the photographs because she "had seen them at the property of Chick Springs Road," the location of the alleged drug activity in this case. (Id. 95.) In addition, she stated that the Government did not identify the men in the photographs prior to questioning her about their identities. (Id. 95.) Further, Boykin testified that her in-

court identification of Craig and Cline was based upon her knowing them previously at the Chick Springs Road residence and not from the photographs. (Trial Tr. 99.)

> In determining whether identification testimony is admissible, a two-step analysis is required. First, the court examines whether the initial identification was impermissibly suggestive. Second, even if the procedure was suggestive, the in-court identification is valid provided the identification is reliable.

United States v. Johnson, 114 F.3d 435, 441 (4th Cir. 1997) (internal citations omitted). Further, "an eyewitness identification at trial following a pretrial identification by photograph should only be suppressed when the photographic identification procedure is so impermissibly suggestive as to give rise to the very substantial likelihood of misidentification." Id.

The Court of Appeals for the Fourth Circuit has previously held that under some circumstances, the display of a single photograph is unduly suggestive. See id. at 442. However, the uncontroverted evidence regarding Boykin's identification of Cline demonstrates that the identification procedure was not "so impermissibly suggestive as to give rise to the very substantial likelihood of misidentification." Id. at 441. Pendleton merely asked Boykin if she knew the two men in the photographs and did not in any way suggest that one of the photographs was Cline. See United States v. Castro, 243 F. Supp. 2d 565, 570 (W.D. Va. 2003). In addition, the "identification did not come at a time when the eyewitness was expected to, or was attempting to, identify any particular person." Id. Prior to Boykin's identification, Pendleton did not inform Boykin of the identities of the defendants. (Trial Tr. 97.) Further, even if Cline could demonstrate that the identification procedure was impermissibly suggestive, the identification procedure was reliable under the totality of the circumstances for the same

6

reasons. See Robinson v. Clarke, 939 F.2d 573, 576 (8th Cir. 1991) (finding a single-photograph identification reliable even if impermissibly suggestive).

Based on the foregoing, Cline's appellate counsel did not act unreasonably by failing to raise this issue, because it was without merit. Further, Cline fails to demonstrate that this issue was clearly stronger than the issues presented on appeal. Therefore, Cline's claim that Mackenzie and Warder were constitutionally ineffective for failing to raise the issue of Boykin's identification on appeal is wholly without merit.

### C. Motion for Discovery

In addition to his § 2255 motion, Cline has filed a motion requesting transcripts of the opening and closing arguments made during his trial. He asserts that this information is necessary to support his prosecutorial misconduct claim and "is directed at proving that the prosecutor may have vouched for the credibility of its witnesses during opening statements and closing arguments." (Cline's Mot. Disc. 2.) Because the court has found that Cline's prosecutorial misconduct claim is without merit, Cline's motion to conduct discovery is denied as moot.

It is therefore

**ORDERED** that Cline's § 2255 motion is summarily dismissed. It is further

**ORDERED** that Cline's motion to conduct discovery, docket number 560, is denied as moot.

**IT IS SO ORDERED**.

                                                s/Henry M. Herlong, Jr.
                                                United States District Judge

Greenville, South Carolina
August 30, 2007

### NOTICE OF RIGHT TO APPEAL

The movant is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.